# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| NATHANIEL KENNARD (#2008-0010243), | ) |
| Plaintiff, | ) |
| | ) No. 08 C 6844 |
| v. | ) |
| | ) Hon. James B. Zagel |
| COOK COUNTY DEPT. OF CORR., et al., | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

The plaintiff, an inmate in the custody of the Cook County Department of Corrections, has brought this *pro se* civil rights action pursuant to 42 U.S.C. § 1983. The plaintiff claims that the defendants, jail health care providers, violated the plaintiff's constitutional rights by denying him needed dental treatment. More specifically, the plaintiff alleges that extraction of his wisdom teeth was denied or unduly delayed (the record is unclear as to whether the extraction was eventually performed). This matter is before the court for ruling on the parties' cross-motions for summary judgment. For the reasons stated in this order, the plaintiff's motion is denied and the defendants' motion is granted.

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Vision Church v. Village of Long Grove*, 468 F.3d 975, 988 (7th Cir. 2006). In determining whether factual issues exist, the court must view all the evidence and draw all reasonable inferences in the light most favorable to the non-moving party. *Walker v. Northeast Regional Commuter Railroad Corp.*, 225 F.3d 895, 897 (7th Cir. 2000).

Rule 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Sarver v. Experian Information Solutions*, 390 F.3d 969, 970 (7th Cir. 2004) (citations omitted).

## **FACTS**

The defendants filed a statement of uncontested material facts pursuant to Local Rule 56.1 (N.D. Ill.). Together with their motion for summary judgment, the defendants included a "Notice to Pro Se Litigant Opposing Motion for Summary Judgment," as required by circuit precedent. [*See* document no. 35-1; *see also* document 35-2, copies of the court's Local Rules pertaining to summary judgment.] That notice outlined the requirements of the Local Rules and warned the plaintiff that a party's failure to controvert the facts as set forth in the moving party's statement results in those facts being deemed admitted. *See, e.g., Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003). The notice specifically provides:

> Local Rule 56.1(b) requires a party opposing a motion for summary judgment to file:
>
> > (3) a concise response to the movant's statement that shall contain
> >
> > (A) a response to each numbered paragraph in the moving party's statement, including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon, and
> >
> > (B) a statement, consisting of short numbered paragraphs, of any additional facts that require denial of summary judgment, including references to the affidavits, parts of the record, and other supporting materials relied upon.

2

L.R. 56.1(b).

The district court may require strict compliance with Local Rule 56.1 in view of the importance of the governing rules' importance in structuring the summary judgment process. *See Ammons v. Aramark Uniform Serv., Inc.*, 368 F.3d 809, 817 (7th Cir. 2004); *Bordelon v. Chicago School Reform Board of Trustees*, 233 F.3d 524, 527 (7th Cir 2000). Although *pro se* plaintiffs are entitled to lenient standards, compliance with procedural rules is required. *Cady v. Sheahan*, 467 F.3d 1057, 1061 (7th Cir. 2006); *see also Koszola v. Bd. of Educ. of the City of Chicago*, 385 F.3d 1104, 1108 (7th Cir. 2004). "We have ... repeatedly held that a district court is entitled to expect strict compliance with [Local] Rule 56.1." *Cichon v. Exelon Generation Co.*, 401 F.3d 803, 809 (7th Cir. 2005).

Despite these admonitions, the plaintiff has not responded in any fashion to the defendants' statement of uncontested facts. Instead, he has simply filed a cross-motion for summary judgment consisting of an excerpt from a recent report on the Cook County Jail, along with copies of multiple grievances the plaintiff submitted at the jail concerning his dental care. The plaintiff's cross-motion for summary judgment is consequently denied for failure to comply with the requirements set forth in Local Rule 56.1 (N.D. Ill.). Furthermore, the following facts set forth in the defendants' statement of facts are therefore deemed uncontested for purposes of this motion:

The plaintiff is a pretrial detainee, confined at the Cook County Jail at all times relevant to this action. (Amended Complaint, p. 1.) Defendant Thomas Prozorovsky is a dentist at the facility. (*Ibid.*) Defendant Nagib Ali is a staff physician. (*Ibid.*) Defendant Richard Patton is a paramedic at the jail. (*Ibid.*)

On September 16, 2008, the medical staff referred the plaintiff to Dr. Prozorovsky for a consultation. (Defendants' Exhibit 1, Affidavit of Thomas Prozorovsky, ¶ 8.) The medical staff prescribed the plaintiff Ibuprofen for the period of September 16, 2008, through September 25, 2008, the date of the appointment. (*Id.*, ¶ 17.)

On September 25, 2008, defendant Prozorovsky performed a dental examination on the plaintiff. (*Id.*, ¶ 9.) Although the plaintiff complained of swelling gums, Prozorovsky noted no swelling. (*Ibid.*) However, Prozorovsky did see that two "partially erupted" third molars (wisdom teeth) had irritated gum tissue. (*Ibid.*)

Prozorovsky issued a referral for the plaintiff to see an oral surgeon at Fantus Clinic to have his wisdom teeth extracted. (*Id.*, ¶ 10.) In Prozorovsky's opinion, "there was no medical condition needing immediate attention." (*Ibid.*) However, Prozorovsky marked the referral request as "urgent" due to the plaintiff's insistence. (*Ibid.*) Since there was no infection, Prozorovsky gave the plaintiff fourteen Motrin tablets for any irritation he might experience while awaiting the tooth extraction. (*Ibid.*) Dr. Prozorovsky believed that the plaintiff's teeth had become "uncomfortable" because they did not erupt properly. (*Id.*, ¶ 13.) Prozorovsky hoped that the removal of the wisdom teeth would relieve any discomfort. (*Ibid.*)

On November 20, 2008, Prozorovsky had a follow-up appointment with the plaintiff. (*Id.*, ¶ 14.) Prozorovsky learned that the plaintiff had not yet undergone the tooth extraction. (*Ibid.*) The plaintiff reported that he had been taken to the Fantus Clinic but that no oral surgeon was available that day. (*Ibid.*) Prozorovsky examined the plaintiff and detected no swelling, infection, or fever. (*Ibid.*) Prozorovsky prescribed more Motrin for any irritation the plaintiff might be experiencing.

(*Ibid.*)  Prozorovsky also issued a second referral to an oral surgeon.  (*Ibid.*)  Prozorovsky again marked the referral as "urgent," at the plaintiff's request.  (*Ibid.*)

The plaintiff initiated this lawsuit on December 1, 2008, a little over two months after he began experiencing problems with his wisdom teeth.  (*See* docket.)

The plaintiff reportedly returned to the Fantus Clinic twice more between November 20, 2008, and January 22, 2009, to have his wisdom teeth removed; however, there was once again no oral surgeon on duty or available for a tooth extraction either day.  (*Id.*, ¶ 14.)  During this period, the plaintiff was prescribed Ibuprofen "to cover any irritation."  (*Id.*, ¶ 17.)

At an examination on January 22, 2009, Prozorovsky noted no swelling, no infection, and no fever.  (*Id.*, ¶ 15.)  Prozorovsky nevertheless prescribed fourteen more tablets of Motrin.  (*Ibid.*)  Prozorovsky also issued a third referral for the plaintiff to see an oral surgeon.  (*Ibid.*)  Prozorovsky again flagged the referral as "urgent."  (*Ibid.*)

The plaintiff finally saw an oral surgeon, Joseph Fullmer, on February 5, 2009.  (*Id.*, ¶ 16.)  [Presumably, the oral surgeon extracted the plaintiff's wisdom teeth at that time, although Prozorovsky's affidavit does not explicitly say so.]  Dr. Fullmer noted no acute infection and recommended Motrin for pain.  (*Ibid.*)  Fullmer did not prescribe an antibiotic.  (*Id.*, ¶ 16.)  The plaintiff was prescribed and given Ibuprofen for the period spanning February 5, 2009, through February 12, 2009, while he recovered from the oral surgery.  (*Id.*, ¶ 17.)

The plaintiff was "consistently prescribed and given" pain medication to alleviate any irritation of his gums.  (*Id*., ¶ 17.)  Because the Motrin was prescription strength, the amount of medication given at any one time was controlled to prevent the sharing of the medication with other detainees.  (*Ibid.*)

Based on Prozorovsky's experience, the plaintiff was provided the same medical care ordinarily given to patients inside or outside the jail setting. (*Id.*, ¶ 18.) Patients are usually prescribed Ibuprofen or an equivalent for minor pain such as gum irritation to cover the periods before a surgery. (*Ibid.*) Wisdom teeth are frequently taken out because they can cause irritation if they do not erupt completely. (*Id.*, ¶ 12.) However, unless an infection is indicated, there is no emergency situation requiring immediate medical intervention. (*Ibid.*) The removal of wisdom teeth, absent infection, is generally considered elective surgery. (*Id.*, ¶ 5.)

## **DISCUSSION**

No material facts are in dispute, and the defendants have established that they are entitled to judgment as a matter of law. Irrespective of whether the plaintiff's desire to have his wisdom teeth extracted amounted to a serious medical need, the record does not support a finding that the defendants acted with deliberate indifference to any such need.

The Due Process Clause prohibits deliberate indifference to the serious medical needs of a pretrial detainee. *Grieveson v. Anderson*, 538 F.3d 763, 779 (7th Cir. 2008); *Chapman v. Keltner*, 241 F. 3d 842, 845 (7th Cir. 2001). "[D]ental care is one of the most important medical needs of inmates." *Board v. Farnham*, 394 F.3d 469, 480 (7th Cir. 2005); *Wynn v. Southward*, 251 F.3d 588, 593 (7th Cir. 2001). Deliberate indifference in the medical context has both an objective and a subjective element: the inmate must have an objectively serious medical condition, and the correctional official or health care provider must be subjectively aware of and consciously disregard the medical need. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Estelle v. Gamble*, 429 U.S. 97, 103-04 (1976); *Rodriguez v. Plymouth Ambulance Service*, 577 F.3d 816, 829 (7th Cir. 2009).

**I. Objectively Serious Medical/Dental Condition**

There is scant evidence that the plaintiff's need to have his wisdom teeth extracted was objectively serious enough to implicate the Fourteenth Amendment. The Constitution is violated only if prison officials are inattentive to an objectively "serious" medical need (or signs of a serious medical need). *Brownell v. Figel*, 950 F.2d 1285, 1289-92 (7th Cir. 1991); *Watson-El v. Wilson*, No. 08 C 7036, 2010 WL 3732127, *13 (N.D. Ill. Sep. 15, 2010 (Holderman, J.) (citations omitted). Under the Seventh Circuit's standard,

> [a] "serious" medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.... [Indications of a serious medical need include] the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain.

*See Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997). A condition may also be deemed objectively serious if "failure to treat [it] could result in further significant injury or unnecessary and wanton infliction of pain." *Hayes v. Snyder*, 546 F.3d 516, 522 (7th Cir. 2008), *citing Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997).

In Dr. Prozorovsky's medical opinion, the plaintiff had no serious medical need. According to Prozorovsky, the plaintiff exhibited no swelling, infection, tenderness, or fever; at most, he thought the plaintiff might experience some "discomfort" from gum irritation. Prozorovsky regarded the plaintiff's condition as "non-emergent" and not requiring immediate medical intervention. Prozorovsky declares that the removal of wisdom teeth, unless there is an infection, is generally considered elective surgery. Seventh Circuit case law echoes this distinction: in *Board*, *supra*, the U.S. Court of Appeals observed that in a number of circuits, "dental pain **accompanied**

7

**by various degrees of attenuated medical harm** may constitute an objectively serious medical need." *Board*, 394 F.3d at 480 (emphasis added; citations omitted). In short, under Prozorovsky's analysis, the plaintiff's dental condition could not fairly be characterized as an objectively serious medical need requiring urgent treatment.

However, in response to the defendants' motion for summary judgment, the plaintiff has submitted copies of grievances indicating more than minor irritation. In a grievance dated August 1, 2008, the plaintiff asserted that "my gums are swelling around my teeth and it's hard for me to eat my food." In a second grievance dated August 18, 2008, he wrote, "I feel that this is an emergenc[y]." In an appeal dated January 18, 2009, the plaintiff reported, "I am in constant pain, and ... [e]very time I eat, my gums start bleeding." (*See* Plaintiff's Exhibits to Motion for Summary Judgment.) Because the plaintiff is competent to testify about the pain and other symptoms he allegedly endured, *see* Fed. R. Evid. 602, the court will accept the statements in the grievances as true. Consequently, the court will assume for purposes of the parties' motions for summary judgment that the plaintiff's need to have his wisdom teeth extracted amounted to an objectively serious medical condition.[1]

**I. Deliberate Indifference**

Even assuming that the plaintiff's medical condition was "serious," he has failed to demonstrate that any of the named defendants acted with deliberate indifference to his need to have his wisdom teeth removed.

---

[1] If the court is mistaken in its reading of Dr. Prozorovsky's affidavit and Dr. Fullmer decided that extraction of the plaintiff's wisdom teeth was **not** warranted, as suggested in the defendants' summary judgment brief, that finding by a specialist would be additional proof that the plaintiff suffered no serious medical condition.

It is important to emphasize that medical malpractice, negligence, or even gross negligence does not equate to deliberate indifference. *Johnson v. Doughty*, 433 F.3d 1001, 1013 (7th Cir. 2006), *citing Dunigan ex rel. Nyman v. Winnebago County*, 165 F.3d 587, 592 (7th Cir. 1999). Mere dissatisfaction or disagreement with a doctor's course of treatment is generally insufficient to state a Section 1983 claim. *Johnson*, 433 F.3d at 1013, *citing Snipes v. DeTella*, 95 F.3d 586, 592 (7th Cir. 1996). It is not enough to show, for instance, that a doctor should have known that surgery was necessary; rather, the doctor must know that surgery was necessary and then consciously disregard that need in order to be held deliberately indifferent. *Johnson*, 433 F.3d at 1013, *citing Higgins v. Corr. Med. Servs. of Ill., Inc.*, 178 F.3d 508, 511 (7th Cir. 1999).

Nonetheless, "a trier of fact can conclude that the professional knew of the need from evidence that the serious medical need was obvious." *Johnson*, 433 F.3d at 1013, *quoting Collignon v. Milwaukee County*, 163 F.3d 982, 989 (7th Cir. 1998); *see also Steele v. Choi*, 82 F.3d 175, 179 (7th Cir. 1996) ("If the symptoms plainly called for a particular medical treatment--the leg is broken, so it must be set; the person is not breathing, so CPR must be administered--a doctor's deliberate decision not to furnish the treatment might be actionable under § 1983."). Moreover, a medical professional's erroneous treatment decision can lead to deliberate indifference liability "if the professional's subjective response was so inadequate that it demonstrated an absence of professional judgment, that is, that no minimally competent professional would have so responded under those circumstances." *See Collignon*, 163 F.3d at 989; *see also Estate of Cole by Pardue v. Fromm*, 94 F.3d 254, 261-62 (7th Cir. 1996) (a health care provider may be liable where his treatment decision is such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible did not base the decision on such a judgment).

9

A disagreement with a doctor's medical judgment or even evidence of malpractice generally will not establish deliberate indifference. *Johnson*, 433 F.3d at 1013, *citing Estelle*, 429 U.S. at 106, but neither will dispensing a modicum of treatment automatically preclude a deliberate indifference claim if a finder of fact could infer that the care provided was so inadequate as to constitute intentional mistreatment. *Edwards v. Snyder*, 478 F.3d 827, 831 (7th Cir. 2007); *Gil v. Reed*, 381 F.3d 649, 664 (7th Cir. 2004); *Sherrod v. Lingle*, 223 F.3d 605, 611-12 (7th Cir. 2000); *Snipes v. DeTella*, 95 F.3d 586, 592 (7th Cir. 1996).

It is also important to reiterate that the Constitution does not require that prisoners receive "unqualified access to health care." *Johnson*, 433 F.3d at 1013, *quoting Hudson v. McMillian*, 503 U.S. 1, 9 (1992). Rather, they are entitled only to "adequate medical care." *Boyce v. Moore*, 314 F.3d 884, 888-89 (7th Cir. 2002); *see also Forbes v. Edgar*, 112 F.3d at 262, 267 (7th Cir. 1997) ("Under the Eighth Amendment, [the plaintiff] is not entitled to demand specific care. She is not entitled to the best care possible. She is entitled to reasonable measures to meet a substantial risk of serious harm to her."). The cost of treatment alternatives is a factor in determining what constitutes adequate, minimum-level medical care, *see Ralston v. McGovern*, 167 F.3d 1160, 1162 (7th Cir. 1999), but medical personnel cannot simply resort to an easier, less expensive course of treatment that they know is ineffective. *Johnson*, 433 F3d at 1013, *citing Kelley v. McGinnis*, 899 F.2d 612, 616 (7th Cir. 1990).

Bearing these standards in mind, the court concludes that no reasonable trier of fact could find that the defendants in this case acted with deliberate indifference. With regard to defendant Prozorovsky, it is uncontested that the dentist assessed the plaintiff's condition as "non-emergent" because there was no swelling, no fever, no sign of infection, and nothing to indicate that anything more than minor "irritation" afflicted the plaintiff. It is also undisputed that Prozorovsky

10

nevertheless repeatedly referred the plaintiff to an oral surgeon to have the wisdom teeth removed, that he earmarked the referrals as "urgent" pursuant to the plaintiff's request even though he considered the procedure to be elective in nature, and that he prescribed the plaintiff prescription-dosage pain medication to alleviate any pain in the interim. The plaintiff himself reported that he was, in fact, taken to Fantus Clinic four times pursuant to Dr. Prozorovsky's referrals, even though no oral surgeon was available the first three times. Although it is most regrettable that the plaintiff experienced delays, he has provided no basis for attributing any of the delays to Prozorovsky. The record does not support an inference that Prozorovsky acted with deliberate indifference.

The plaintiff named two additional defendants in his complaint and amended complaint; however, he has never identified for what acts or omissions he seeks to hold Dr. Nagib Ali and paramedic Richard Patton responsible. The court need not "scour the record to make the case of a party who does nothing." *Greer v. McCurry*, No. 02 C 4326, 2003 WL 21826549, *6 (N.D. Ill. Aug. 5, 2003) (Zagel, J.). "Summary judgment is the 'put up or shut up' moment in a lawsuit. Once a party has made a properly-supported motion for summary judgment, the opposing party may not simply rest upon the pleadings but must instead submit evidentiary materials that set forth specific facts showing that there is a genuine issue for trial." *Harney v. Speedway SuperAmerica, LLC*, 526 F.3d 1099, 1104 (7th Cir. 2008) (citations omitted). At this stage of the proceedings, the plaintiff was required to come forth with some evidence to show that a triable issue of fact exists as to whether Ali and/or Patton acted with deliberate indifference. *See* Fed. R. Civ. P. 56(c); *Jackson v. Kotter*, 541 F.3d 688, 697 (7th Cir. 2008); *Keri v. Bd. of Trustees of Purdue Univ.*, 458 F.3d 620, 627-28 (7th Cir. 2006). In the absence of any such evidence whatsoever, summary judgment must be granted in favor of both individuals.

In sum, the plaintiff has failed to demonstrate that there is a genuine issue for trial. It is entirely unacceptable that any individual–incarcerated or not–would have to wait over four months to have wisdom teeth removed when the dental issue was causing him discomfort. Nevertheless, the plaintiff has not come forth with evidence tending to show that the named defendants were personally and directly responsible for the delays the plaintiff experienced. The plaintiff has failed to adduce sufficient evidence of deliberate indifference for the matter to go to a jury.

## **CONCLUSION**

In conclusion, no material facts are in dispute, and the defendants have established that they are entitled to judgment as a matter of law. No reasonable trier of fact could find that the defendants acted with deliberate indifference to the plaintiff's serious medical (dental) needs. Accordingly, for the foregoing reasons, the defendants' motion for summary judgment is granted and the plaintiff's cross-motion for summary judgment is denied.

If the plaintiff wishes to appeal this final judgment, he may file a notice of appeal with this court within thirty days of the entry of judgment. Fed. R. App. P. 4(a)(4). A motion for leave to appeal *in forma pauperis* should set forth the issues the plaintiff plans to present on appeal. *See* Fed. R. App. P. 24(a)(1)(C). If the plaintiff does choose to appeal, he will be liable for the $455 appellate filing fee irrespective of the outcome of the appeal. *Evans v. Illinois Dept. of Corrections*, 150 F.3d 810, 812 (7th Cir. 1998). Furthermore, if the appeal is found to be non-meritorious, the plaintiff may also be assessed a "strike" under 28 U.S.C. § 1915(g). The plaintiff is warned that, pursuant to that statute, if a prisoner has had a total of three federal cases or appeals dismissed as frivolous, malicious, or failing to state a claim, he may not file suit in federal court without prepaying the filing fee unless he is in imminent danger of serious physical injury.

IT IS THEREFORE ORDERED that the plaintiff's motion for summary judgment [#41] is denied. The defendants' motion for summary judgment [#33] is granted. The Clerk of Court is directed to enter judgment in favor of the defendants pursuant to Fed. R. Civ. P. 56.

Enter: *James B. Zagel*
JAMES B. ZAGEL
United States District Judge

Date: January 27, 2011